Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PABLO COLÓN SANTIAGO<br><br>Apelado<br><br><br>v.<br><br><br>LORENZO DELGADO TORRES Y OTROS<br><br>Apelante | KLAN202400340 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Caso Núm.: PO2020CV01225<br><br>Sobre: Libelo, calumnia, difamación |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece ante esta Curia, Lorenzo Delgado Torres (Delgado Torres o apelante) y solicita que dejemos sin efecto la *Sentencia*[1] que el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario) emitió y notificó el 16 de febrero de 2024. Mediante el referido dictamen, el foro primario declaró ha lugar la *Demanda*[2] sobre daños y perjuicios por difamación que Pablo Colón Santiago (Colón Santiago o apelado) incoó en su contra y lo condenó al pago de $50,000.00 por daños a la reputación, más $25,000.00 por concepto de angustias mentales.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado. Veamos.

**I.**

El 18 de agosto de 2020, Colón Santiago instó la presente causa de acción en contra de Delgado Torres. Surge de las alegaciones de la demanda que su reclamo se originó luego de que

---

[1] Apéndice, págs. 53-93.
[2] Apéndice, págs. 392-403.

Número Identificador

SEN2024 _____

Delgado Torres publicara en su página cibernética denominada "El León Fiscalizador" información presuntamente falsa, difamatoria y libelosa sobre Colón Santiago. Expuso en la demanda que, Delgado Torres también publicó en su página, varios vídeos con un contenido difamatorio sobre su persona. El primer vídeo, el 17 de agosto de 2020 a las 5:58 pm y al siguiente día, a las 8:58 pm Delgado Torres publicó otro vídeo.

Sobre tales bases, Colón Santiago alegó haber sufrido incalculables daños, entre otros, angustias mentales, daños morales, espirituales y a la reputación, los cuales estimó en cinco millones de dólares. Reclamó, además, el pago de $50,000.00 por concepto de costas y honorarios de abogado.

Por resultar atinente a los planteamientos esbozados en el recurso ante nos, a continuación, resaltamos ciertos aspectos del tracto procesal. Tras Delgado Torres solicitar una prórroga para contestar la demanda[3], ante la presunta dificultad de contratar un abogado que lo represente en este asunto, el foro primario accedió a lo antes,[4] producto de lo cual, el demandado -por derecho propio- acreditó su alegación responsiva el 25 de noviembre de 2020.[5] En ella, negó gran parte de las alegaciones de la demanda. Sin embargo, aceptó haber publicado la información cuestionada en este caso. Expuso que la publicación fue en respuesta a ciertos comentarios negativos que publicó Colón Santiago sobre su persona. Puntualizó el carácter de figura pública político-partidista que ostentaba entonces Colón Santiago como manejador de la campaña de María (Mayita) Meléndez Altieri para la Alcaldía del Municipio de Ponce. Fundamentado en lo anterior, solicitó al TPI que declarara no ha lugar la demanda instada en su contra.

---

[3] Apéndice, pág. 329.
[4] Apéndice, pág. 326.
[5] Apéndice, págs. 302-305.

En reacción a ciertos petitorios promovidos por el demandante, el TPI notificó una *Orden*[6] mediante la cual instruyó a Delgado Torres a enmendar su contestación a la demanda, a los fines de dar cumplimiento a los requerimientos que establece la Regla 6.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V. R.6.2.[7] Cumplido lo anterior y a solicitud de Delgado Torres, el TPI ordenó a Colón Santiago certificar haberle remitido a la otra parte una copia de todos los escritos presentados hasta la fecha.[8] A esos efectos, Colón Santiago certificó que, a pesar de que el caso de autos consta en el Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Poder Judicial, envió nuevamente a Delgado Torres todos sus escritos a su correo electrónico.[9]

Surge del expediente que, Colón Santiago instó una *Moción para que se tenga por admitido el requerimiento de admisiones.*[10] En ella hizo constar que, remitió a Delgado Torres el referido requerimiento el 18 de septiembre de 2020, el cual reenvió el 13 de noviembre de 2020, junto a los demás escritos presentados a esa fecha.[11] En reacción, Delgado Torres se opuso y adujo no haber recibido ningún requerimiento de admisiones.[12]

Evaluado lo anterior, el 22 de diciembre de 2020, el foro primario emitió varios dictámenes entre los cuales resaltamos una *Resolución* mediante la cual señaló la vista de conferencia inicial para el 5 de febrero de 2021 a celebrarse por videoconferencia[13] y

---

[6] Apéndice, pág. 301.
[7] Apéndice pág. 308-310.
[8] Apéndice, pág. 318.
[9] Apéndice, pág. 314.
[10] Apéndice, pág. 297.
[11] La re-notificación del requerimiento de admisiones por correo electrónico se debió a que el foro primario solicitó a Colón Santiago certificar haber enviado a Delgado Torres una copia de todos los escritos presentados a esa fecha. Ello, en respuesta a una moción de este último solicitando ser notificado de todos los escritos y alegando no haber recibido la *Moción Informativa* que instó Colón Santiago de la cual el TPI se dio por enterado. Apéndice, págs. 318-319, 324 y 327.
[12] Apéndice, págs. 287-288.
[13] Apéndice, pág. 286.

otra en la cual dio por admitido el requerimiento de admisiones.[14] Delgado Torres no compareció a la vista de conferencia inicial, por sí ni mediante representación legal alguna. El TPI hizo constar en la *Minuta* que, durante la vista, se percató de que la invitación a dicho señalamiento por videoconferencia no le fue remitida a Delgado Torres por correo electrónico.[15] Por consiguiente, fijó y notificó un nuevo señalamiento de la conferencia inicial para el 4 de marzo de 2021. Conforme surge de la minuta, llegado el día de la vista, el demandado no compareció y tampoco acreditó cumplimiento a las órdenes para que anunciara representación legal. A petición del demandante, el foro primario le anotó la rebeldía al demandado, sin embargo, específicamente dejó pendiente la eliminación de sus alegaciones.[16]

Así las cosas, se calendarizó la vista de rebeldía a celebrarse el 23 de julio de 2021. Dicho señalamiento fue objeto de varias posposiciones y finalmente se celebró la vista en rebeldía el 30 de marzo de 2022 y el 17 de febrero de 2023.[17] El 28 de marzo de 2022, Delgado Torres instó una *Moción solicitando se deje sin efecto la anotación de rebeldía y se me asigne abogado de oficio*.[18] Expuso en su escrito que, a pesar de decenas de visitas a oficinas de abogados del área sur de la Isla, no ha logrado contratar representación legal para este litigio debido a las presuntas influencias que posee Colón

---

[14] Apéndice, pág. 283.
[15] Apéndice, pág. 265.
[16] Apéndice, pág. 261. Minuta de la vista celebrada el 4 de marzo de 2021. Véase, además, Apéndice, págs. 262-264.
[17] Apéndice págs. 194-246. El foro primario se percató de que Delgado Torres no había sido notificado sobre el señalamiento del 4 de marzo de 2021, por lo que dejó sin efecto la anotación de rebeldía. Sin embargo, en la vista de 23 de julio de 2023, el TPI también hizo constar en la *Minuta* que, en efecto Delgado Torres fue notificado del señalamiento de la vista en rebeldía calendarizado para ese día. Ante ello, el foro primario reinstaló la anotación de rebeldía ante su incomparecencia a la vista de rebeldía señalada para el 23 de julio de 2021. Surge del expediente que, el TPI ordenó a la Secretaría notificar la referida *Minuta* a Delgado Torres y fijó nuevas fechas para celebrar la vista en rebeldía. En anticipación a la celebración de la vista en rebeldía, se celebró una vista el 29 de octubre de 2021 para marcar la prueba, a la cual a pesar haber notificado a Delgado Torres, no compareció. El 30 de marzo de 2022, inició el desfile de prueba con el testimonio del demandante y se señaló la continuación para el 29 de abril de 2022 y el 7 de julio de 2022, los cuales también fueron reseñalados.
[18] Apéndice, págs. 191-192.

Santiago en la región. Añadió que, algunos abogados mostraron interés en representarlo, sin embargo, le solicitaron cuantías de honorarios que no puede sufragar. Por último, solicitó el levantamiento de la rebeldía por entender que la anotación no es atribuible a su persona.

Evaluado lo anterior, el TPI denegó el petitorio de Delgado Torres.[19] Al cabo de dos días, y según calendarizado,[20] el tribunal apelado inició la vista en rebeldía el 30 de marzo de 2022, a la cual comparecieron ambas partes. Surge de la *Minuta*[21] que, el foro primario le enfatizó a Delgado Torres que está en rebeldía, por lo cual, solo podrá contrainterrogar a los testigos de la parte demandante, sin presentar prueba a su favor. Ante ello, Delgado Torres solicitó auto representarse, lo cual el TPI autorizó. Finalizada la presentación de prueba de Colón Santiago, Delgado Torres -por derecho propio- llevó a cabo su contrainterrogatorio.

Con posterioridad la parte demandante instó un memorando de derecho[22] con los fundamentos en torno al carácter de persona privada de Colón Santiago a la fecha de los hechos objeto de este litigio. Separadamente, y a modo de establecer los precedentes de los daños alegados, Colón Santiago presentó un estudio de valoración de daños,[23] tal cual lo exige la normativa de *Santiago Montañez, et al. v. Fresenius Medical Care, et al.,* 195 DPR 476, 491 (2016).

Aquilatada la prueba, el foro primario dictó la *Sentencia* apelada mediante la cual declaró ha lugar la demanda de epígrafe y ordenó a Delgado Torres pagar a Colón Santiago $50,000.00 por concepto de daños a la reputación, más $25,000.00 en angustias mentales. Debido a que Delgado Torres estaba en rebeldía, el TPI dio

---

[19] Apéndice, pág. 190.
[20] Apéndice, pág. 194.
[21] Apéndice, págs. 184-185.
[22] Apéndice, págs. 113-168.
[23] Apéndice, págs. 97-101.

por admitidas las alegaciones bien formuladas de la demanda. También reiteró su determinación (notificada en autos el 22 de diciembre de 2020) de dar por admitidos los hechos que surgen del requerimiento de admisiones.

Tras consignar el derecho aplicable, el TPI en su análisis enfatizó los hechos probados que surgen del requerimiento de admisiones. En particular resaltamos que quedó admitido que, previo a las publicaciones objeto de este litigio, el demandado no poseía ni conocía información que vincule al demandante con actividades delictivas; que realizó las publicaciones en términos absolutos, imputándole a Colón Santiago conducta delictiva federal, con conocimiento de su falsedad con el propósito de afectar su imagen.

Sobre tales bases el TPI dictaminó que, conforme a la prueba desfilada, Colón Santiago demostró la falsedad de la información publicada, los daños sufridos y la relación causal entre ambos. Concluyó que Delgado Torres actuó con malicia real al publicar información difamatoria a sabiendas de su falsedad.[24]

En su dictamen el TPI expuso que: "[...] luego de examinar y evaluar la prueba documental y testifical presentada, y aquilatada la credibilidad que nos merecían dichos testimonios, del desfile de la prueba no surgió evidencia de que las publicaciones afectaran el ámbito laboral e ingresos del demandante u ocasionaran disminución en su salario o ingresos. Tampoco presentó prueba pericial en cuanto angustias mentales, y aunque dicha evidencia no es un requisito indispensable, su ausencia dificulta precisar la magnitud del impacto emocional y las angustias mentales."[25]

---

[24] En su pronunciamiento el foro primario consignó 83 determinaciones de hechos correspondientes a la prueba que surge del requerimiento de admisiones, el contenido de los vídeos y publicaciones y el testimonio del demandante.
[25] Apéndice, pág. 93.

Luego de ambas partes solicitar sin éxito la reconsideración del dictamen apelado,[26] Delgado Torres comparece ante nos, debidamente representado por su abogado, mediante el presente recurso y señala la comisión de siete errores, a saber:

1. Incidió el H TPI al declarar sin lugar la petición del León Fiscalizador para que se le asignara representación legal.

2. Incidió el H TPI al considerar como prueba sustantiva el requerimiento de admisiones que el demanda[n]te-apelado le cursó al León Fiscalizador.

3. Incidió el H TPI al no determinar específicamente que el demandante-apelado es figura pública[.]

4. Ante la ausencia de una imputación difamatoria incidió el H TPI al reconocerle una causa de acción por difamación[.]

5. Incidió el H TPI al declarar con lugar la reclamación de difamación interpuesta por el demandante-apelado contra el León Fiscalizador sin este haber establecido los elementos constitutivos de su causa de acción mediante prueba clara, robusta y convincente.

6. Incidió el H TPI al reconocerle al demandante-apelado una causa de acción por daño reputacional.

7. Incidió el H TPI al estimar los daños morales del demandante apelado[.]

Culminadas varias incidencias procesales que no es necesario pormenorizar, ante la falta de objeción del apelado a la transcripción oral de la prueba que presentó el apelante, y tal cual advertido, acogimos la misma según presentada. En cumplimiento con nuestras resoluciones emitidas el 6 y 20 de mayo de 2024, el apelado compareció mediante su correspondiente alegato en oposición. En reacción, el apelante replicó y el apelado se opuso mediante una *Moción en oposición a "Réplica a alegato en oposición de 11 de junio"*.

Con el beneficio de las posturas de ambas partes y de la transcripción de la prueba oral, resolvemos.

---

[26] Apéndice, págs. 21-51 y 16-18.

**II.**

**A. Acción en daños y perjuicios por difamación**

En nuestra jurisdicción, la protección en contra de las expresiones difamatorias proviene de la Constitución del Estado Libre Asociado de Puerto Rico, de la Ley de 19 de febrero de 1902, conocida como la Ley de Libelo y Calumnia, 32 LPRA secs. 3141-3149, y del Artículo 1802 del entonces vigente Código Civil de 1930, 31 LPRA sec. 5141. *Meléndez Vega v. El Vocero de PR,* 189 DPR 123 (2013); *Giménez Álvarez v. Silén Maldonado,* 131 DPR 91, 97-98 (1992). Por un lado, el Artículo II, Sección 8 de nuestra Constitución, ofrece una protección en contra de los ataques abusivos a la honra y a la reputación. Mientras que, el objetivo de la Ley de Libelo y Calumnia es salvaguardar la reputación personal y el buen nombre de la persona injuriada públicamente.

El propósito de la acción por difamación es resarcir el daño a la reputación personal de quien fue injuriado públicamente. *Soc. De Gananciales v. El Vocero de P.R.,* 135 DPR 122, 127 (1994). En particular, protegiendo las relaciones actuales y futuras del promovente de la acción con terceros, cuidando su imagen pública y evitando cualquier efecto negativo a su imagen. *Íd.*, págs. 126-127. Cabe señalar que, la acción por difamación continúa siendo una acción torticera intencional, en cuanto a funcionarios y figuras públicas, y una acción de daños y perjuicios basada en negligencia, cuando el supuesto perjudicado es una persona privada. *Colón, Ramírez v. Televicentro de P.R.,* 175 DPR 690, 704 (2009).

Entre los criterios para determinar si una persona debe considerarse figura pública o privada están: su prominencia en los asuntos de la sociedad; su capacidad para influenciar o persuadir en asuntos de interés público; su participación activa al discutir controversias públicas específicas con el fin de inclinar la balanza

en la resolución de los asuntos envueltos. *Oliveras v. Paniagua Diez,* 115 DPR 257, 263 (1984).

En *Colón, Ramírez v. Televicentro de P.R.,* supra, (nota 8) el Tribunal Supremo aclaró que es figura pública quien se lanza voluntariamente al ruedo público y quien goza de mayor oportunidad para acceder a los medios de prensa para contradecir la información falsa publicada sobre su persona. Posteriormente, en *Gómez Márquez et. al. v. El Oriental,* supra, a la pág. 803, nuestro más Alto Foro estableció que también es figura pública quien ostenta una posición gubernamental de tal importancia que el público tiene un interés en sus cualificaciones y ejecutorias.

Precisamos que, la acción de daños y perjuicios por difamación reconocida en Puerto Rico incluye libelo y calumnia. *Ojeda v. El Vocero de P.R.,* 137 DPR 315, 325 (1994). Para que prospere una causa de acción de libelo, el promovente de dicha acción debe probar que la información que se reputa difamatoria es falsa, que esta fue publicada, que se refiere a la persona del difamado en particular y que le ocasionó daños reales. *Íd.,* pág. 328. De otro lado, la calumnia se configura cuando la expresión difamatoria es oral. *Íd.,* pág. 326.

El daño como consecuencia de la difamación es el menoscabo de la opinión que tienen los demás sobre el valor de una persona en particular. *Íd.,* pág. 329. También se refiere a la lesión causada a la reputación y a las relaciones en la comunidad, resultantes de la actuación difamatoria, tales como daños morales y angustias mentales. *Galib Frangie v. El Vocero,* 138 DPR 560, 571-572 (1995). Para que este se configure es imprescindible que la persona se entere que su honor ha sido perjudicado. *Ojeda v. El Vocero de P.R.,* supra. La publicación de la expresión falsa y difamatoria es un elemento esencial para esta causa de acción. *Íd.* Sin embargo, en el caso de la persona privada, el mero hecho de que la información sea

falsa no significa que tendrá derecho a ser indemnizada, salvo que demuestre que la imputación sobre su persona fue hecha de forma negligente. *Íd.*, pág. 328. A esos efectos, para que progrese una causa de acción de daños y perjuicios por difamación es ineludible evidenciar la ocurrencia de un acto u omisión culposo o negligente que produjo un daño y el nexo causal entre ambos. *Íd.*, pág. 329.

Cuando se trate de una figura pública, el demandante deberá evidenciar que la información falsa fue publicada con malicia real y con grave menosprecio de si era o no falsa. *Íd.* Lo antes puesto que, el derecho a la intimidad de la figura pública "pesa menos" que el de los ciudadanos privados que sufrió daños a su reputación. *Garib Bazain v. Clavell,* 135 DPR 475 (1994). De otra parte, la acción al amparo del entonces vigente Artículo 1802, *supra,* permite que la persona perjudicada, además de ser compensada por la lesión a su reputación y a sus relaciones con la comunidad, ser resarcida por las angustias mentales y morales. *Colón, Ramírez v. Televicentro de P.R.,* supra, págs. 712-714.

Como se sabe, constituye negligencia la falta del debido cuidado al no prever las consecuencias racionales de un acto u omisión, tal como una persona prudente habría de preverlo bajo las mismas circunstancias. *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 805-806 (2020). Con ello en mente, el Tribunal Supremo dispuso que los criterios a considerar para determinar negligencia en la publicación de información difamatoria respecto a una persona privada son: (i) la naturaleza de la información publicada, la importancia del asunto de que se trata y especialmente si ésta es difamatoria de su propia faz y puede preverse el riesgo de daños; (ii) origen de la información y confiabilidad de su fuente; y (iii) razonabilidad del cotejo de la veracidad de la información tomando en consideración el costo en términos de dinero, tiempo, personal,

urgencia de la publicación, carácter de la noticia y cualquier otro factor pertinente. *Pérez v. El Vocero de PR,* 149 DPR 427, 448 (1999).

### B. Requerimiento de admisiones

La Regla 33 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 33, regula los requerimientos de admisiones, cuyo propósito es delimitar las controversias y aligerar los procedimientos. *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* supra. A pesar de no ser considerado propiamente un instrumento de descubrimiento de prueba, este mecanismo viabiliza la admisión de cualquier materia dentro del alcance del descubrimiento de prueba dispuesto en la Regla 23.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1. *Íd.* Con ello, la parte adversa queda relevada de presentar prueba en el juicio de los hechos admitidos mediante un requerimiento de admisiones lo cual acorta la audiencia y reduce los gastos. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2000, T. I, pág. 566.

Sobre las formalidades, la Regla 33 de las Reglas de Procedimiento Civil, *supra,* concede veinte (20) días al requerido para responder bajo juramento el requerimiento de admisiones o, en su defecto, presentar una objeción escrita sobre la materia en cuestión. *Rivera Prudencio v. Mun. de San Juan,* 170 DPR 149, 171-172 (2007). De lo contrario, las materias sobre las cuales se solicitó la admisión se tendrán por admitidas automáticamente. *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* supra.

Ahora bien, cuando el requerimiento de admisiones que se dio por admitido bajo las circunstancias antes expuestas contiene alegaciones relacionadas a los daños sufridos por la parte demandante, el Tribunal Supremo aclaró que, por su naturaleza, los alegados daños deberán estar avalados por documentos. *Íd.* Con respecto a los daños por concepto de angustias mentales, nuestro más Alto Foro dispuso que, "son altamente subjetivos y su

valoración depende en gran medida del factor credibilidad." *Íd.*, a la pág. 580.

### C. Apreciación de la prueba

Como regla general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, sin intervenir con la apreciación y la adjudicación de credibilidad que realiza el juzgador de los hechos en relación con la prueba testifical. *Pueblo v. Negrón Ramírez,* 2024 TSPR 41, resuelto el 23 de abril de 2024. Ello, debido a que, "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Después de todo, es el juzgador de los hechos o el jurado quien escucha la prueba testifical y evalúa el comportamiento de los declarantes. *Pueblo v. Negrón Ramírez,* supra.

De conformidad, el Tribunal Supremo de Puerto Rico ha resuelto que, los tribunales apelativos intervienen con la apreciación de la prueba cuando: (1) el apelante demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesto; o (2) si la apreciación de la prueba no concuerda con la realidad fáctica o esta es inherentemente imposible o increíble. *Pueblo v. Negrón Ramírez,* supra. A esos efectos, la parte que impugne la apreciación de la prueba es la parte encargada de señalar y demostrar la base para la intervención apelativa. *Pueblo v. Cabán Torres,* 117 DPR 645 (1986).

Por otro lado, la Regla 110 (a) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 110(a), dispone que "el peso de la prueba recae sobre

la parte que resultaría vencida de no presentarse evidencia por alguna de las partes".

**III.**

En su recurso, el apelante solicita que revoquemos el dictamen apelado en todos sus extremos. Arguye como primer error que el foro primario incidió al negarse a asignarle representación legal y, con ello, presuntamente menoscabó su capacidad de defenderse y de proteger sus derechos mediante las herramientas y mecanismos legales.

Surge del expediente que, el 18 de septiembre de 2020, el apelante solicitó una prórroga de 60 días para contestar la demanda y en su petitorio hizo constar su dificultad consiguiendo representación legal. El apelante adujo que visitó decenas de oficinas de abogados en el área de Ponce en búsqueda de alguien que lo representara en este litigio y que los pocos que estaban dispuestos a representarlo en contra de Colón Santiago le solicitaron cuantías "astronómicas de honorarios". En consideración a lo anterior, el TPI concedió la referida prórroga y Delgado Torres contestó la demanda por derecho propio.

Así las cosas, el 2 de febrero de 2021, el TPI concedió 10 días a Delgado Torres para anunciar su representación legal. Transcurrido más de un año sin dar cumplimiento a la referida orden y sin informar oportunamente al foro primario sobre la persistencia de su imposibilidad de conseguir abogado, el 28 de marzo de 2022, a dos días de la vista en rebeldía, Delgado Torres solicitó al TPI que le asigne un abogado de oficio, lo cual el TPI denegó.

Constatamos de la transcripción de la prueba oral que, durante la vista en rebeldía, celebrada el 30 de marzo de 2022, se

discutió nuevamente este asunto.[27] A esos efectos, el TPI hizo constar que Delgado Torres solicitó tardíamente la designación de un abogado, a saber, dos días antes de la vista en rebeldía. Aclaró que, el reglamento aplicable intitulado *Reglamento para la asignación de abogados y abogadas de oficio de Puerto Rico* establece unos requisitos de forma que se han de cumplir antes de realizar una designación de oficio y que está limitada a ciertas causales entre las cuales no surge una reclamación en daños y perjuicios por difamación. A lo antes, el foro primario añadió que goza de discreción para conceder una solicitud oportuna de esta naturaleza.

En consideración a lo anterior, resolvemos que Delgado Torres no puso en posición al TPI para actuar sobre la presunta dificultad que tuvo en conseguir un representante legal para este litigio. Evidentemente, su solicitud no fue oportuna, tras demorar un año en traer nuevamente este asunto ante la consideración del foro primario, contados a partir de que el TPI le ordenó anunciar su representación legal. Lo antes, sin obviar que la reclamación de epígrafe no obra entre los procedimientos de naturaleza civil que contempla la Regla 5(b) del *Reglamento para la asignación de abogados y abogadas de oficio de Puerto Rico.*[28] A lo anterior se

---

[27] Transcripción de la prueba oral (TPO), Apéndice, págs. 436-438. Sobre el particular, el TPI hizo constar en su *Minuta* lo siguiente: "[e]l Tribunal se sostiene en su determinación en la mañana de ayer sobre la solicitud que se presentó el lunes, 28 de marzo de 2022. El caso está señalado para continuar en el día de hoy y es importante que la parte demandada conozca que tiene la rebeldía anotada y que en efecto está en rebeldía y que no puede presentar testigos, ni presentar prueba a su favor. Sí tendría derecho a contra interrogar [sic] a los testigos de la parte demandante [...] La parte demandada le solicita al Tribunal que se pueda representar por derecho propio y el licenciado Sánchez Rodríguez no tiene objeción a lo solicitado. El Tribunal va a permitir que el demandado se auto represente y se va a continuar con los procedimientos del caso." Apéndice, págs. 184-185.

[28] Este Reglamento aplicará a los procedimientos judiciales de naturaleza civil en los cuales se haya reconocido el derecho a la asignación de representación legal a una persona natural, así como a aquellos en los que estén implicadas las necesidades fundamentales del ser humano, los cuales incluyen, entre otros que se puedan establecer mediante directriz por la Oficina de Administración de los Tribunales, los siguientes: (1) Sección 11 de la Ley de la Administración de Servicios de Salud Mental y Contra la Adicción, Ley Núm. 67-1993, según enmendada, 3 LPRA sec. 402j; (2) Artículos 3.06, 4.19 y 8.22 de la Ley de Salud Mental de Puerto Rico, Ley Núm. 408-2000, según enmendada, 24 LPRA secs. 6154e, 6155r y 6159u; (3) Artículos 4 y 21 de la Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores, Ley Núm. 121-2019; (4) Artículo 3 de la Carta de Derechos de las Víctimas y Testigos de Delito, Ley Núm.

añade que, durante la vista en rebeldía, el foro primario permitió al apelante confrontar la prueba que presentó el apelado como salvaguarda de su debido proceso de ley. El primer error no se cometió.

El apelante arguye en su segundo error que el foro primario incidió al dar por admitido el requerimiento de admisiones, sin antes apercibirle al respecto. Sin embargo, el apercibimiento al cual se refiere el apelante aplica cuando el tribunal acorta el término de veinte (20) días para contestar el requerimiento de admisiones.[29] Ello no ocurrió en el presente caso. Surge claramente del tracto procesal que, el apelado remitió al apelante el referido requerimiento el 18 de septiembre de 2020 y, en cumplimiento de una *Orden* del TPI en la cual se ordenó al apelado certificar haber notificado a Delgado Torres todos los escritos presentados al 4 de noviembre de 2020, Colón Santiago envió nuevamente el requerimiento el 13 de noviembre de 2020. Sin embargo, Delgado Torres no acreditó cumplimiento.

En virtud de la Regla 33 de las Reglas de Procedimiento Civil, *supra,* Delgado Torres tenía veinte (20) días para contestar el requerimiento de admisiones, vencedero el 3 de diciembre de 2020, si realizamos el cómputo desde que fue notificado la segunda vez, lo cual representa la forma más favorable para el apelante. No es hasta el 22 de diciembre de 2020 que el TPI dio por admitido el

---

22-1988, según enmendada, 25 LPRA sec. 973b; (5) Artículo 5 de la Carta de Derechos de las Personas Viviendo con VIH, Ley Núm. 248-2018, 1 LPRA sec. 528d; (6) Designación de incapacidad y nombramiento de tutor, sujeto a la inexistencia de bienes que denoten falta de indigencia; (7) Desahucio, cuando la parte demandada es inquilina que recibe beneficios públicos bajo programas de vivienda pública u otros análogos; (8) Desahucio en precario; (9) Ejecución de hipoteca; (10) *Habeas corpus*; (11) Privación de patria potestad, o (12) Remoción o entrega voluntaria de menores.

[29] A esos efectos, la Regla 33 de Procedimiento Civil, *supra,* dispone en lo pertinente: "[...] A menos que el tribunal acorte el término, una parte demandada no estará obligada a notificar contestaciones u objeciones antes de transcurridos veinte (20) días a partir de haberle sido entregada copia de la demanda y el emplazamiento. En este caso se debe apercibir a la parte demandada en el requerimiento que de no contestarlo en el término dispuesto se entenderá admitido. [...]"

requerimiento de admisiones en controversia. El foro primario actuó conforme a la Regla 33 de Procedimiento Civil, *supra,* y a su jurisprudencia interpretativa. El segundo error no se cometió.

En su recurso, el apelante señala como tercer error que el foro primario no determinó específicamente que Colón Santiago es figura pública. Si bien es cierto que el foro primario omitió expresar de forma fehaciente si consideró al apelado figura pública o privada, la realidad es que concluyó que el apelado cumplió con el *quantum* de prueba que se requiere tanto cuando la persona difamada es figura privada como cuando es figura pública. A esos efectos, el foro primario resolvió: "[...]quedó establecido y se probó clara y convincentemente que la diseminación de información difamatoria fue publicada por el Demandado Lorenzo Delgado Torres con grave menosprecio a la verdad y malicia real."[30]

Ahora bien, de nuestro examen sosegado del expediente, colegimos que, en virtud de lo resuelto en *Oliveras v. Paniagua Diez,* supra, y en *Colón, Ramírez v. Televicentro de P.R.,* supra, Colón Santiago era una figura privada a la fecha de los hechos objeto de este litigio. Surge del testimonio del apelado que, a la fecha de estos hechos, nunca había ejercido un cargo público.[31] A pesar de que es un hecho admitido a través del requerimiento de admisiones que Colón Santiago ha estado involucrado en la defensa de múltiples casos de alto perfil en Puerto Rico, eso no es uno de los criterios que dispuso el Tribunal Supremo para considerarlo figura pública.

A pesar de que hoy resolvemos que Colón Santiago era una figura privada a la fecha de los hechos objeto de este litigio, consideramos que la ausencia de precisión en el pronunciamiento del foro primario sobre este asunto no constituye un error sustancial. Más bien implica que, el apelado evidenció que la

---

[30] Apéndice, pág. 92.
[31] TPO, Apéndice, pág. 527.

información falsa sobre su persona fue publicada con malicia real, sobrepasando así el estándar de prueba de negligencia requerido para los casos en donde se difama a una figura privada. El tercer error no se cometió.

Discutiremos conjuntamente el cuarto, quinto y séptimo error debido a la estrecha relación entre sí. En ellos, el apelante cuestiona la determinación del TPI de declarar con lugar la causa de acción por difamación ante la falta de prueba de los elementos constitutivos y de conceder daños morales a favor del apelado.

Cabe puntualizar que, en el presente caso, el apelante estaba en rebeldía y tal anotación no es objeto de revisión en este recurso. Según expusimos previamente, además de dar por admitidas las alegaciones de la demanda, el foro primario admitió las materias objeto del requerimiento de admisiones por Delgado Torres no contestarlo. Con ello, el TPI dio por admitido que Delgado Torres publicó información falsa sobre Colón Santiago y que lo hizo de forma negligente. Ahora bien, lo antes, no exime al demandante de su deber de presentar prueba que sustente los daños que reclama. A esos efectos, evaluamos la prueba testifical que presentó Colón Santiago en apoyo a las angustias mentales reclamadas, la cual Delgado Torres tuvo la oportunidad de confrontar mediante su contrainterrogatorio.

Surge de la transcripción oral de la prueba que, a preguntas sobre qué cosas pasaron por su mente luego de la publicación, Colón Santiago testificó: "[s]e me vino el mundo encima, se me vino el mundo encima…"[32] Posteriormente expresó: "[e]l día que ese señor publicó eso, yo me quería morir […] Yo no puedo soportar eso. Yo no puedo soportar que nadie atente con[tra] la reputación y el nombre que por tanto tiempo yo he conservado, Juez."[33]

---

[32] TPO, Apéndice, pág. 518.
[33] TPO, Apéndice, pág. 524.

De otra parte, en respuesta al comentario del apelante de que el apelado no tiene credibilidad, Colón Santiago ripostó: "[...] los incidentes más serios que yo he tenido en este tribunal, los he tenido cada vez que se pone en tela de juicio mi credibilidad."[34] A lo antes añadió que, "lo peor de todo, Juez, es que mis hijas veían esto."[35] Narró que ve a sus hijas todos los días y que ellas le decían lo que se había publicado.[36] Refiriéndose a su hija menor declaró que, ella no se quería bajar en la escuela "porque los nenes le dicen yo no sé qué."[37] Agregó que su hermana, a quien describió como un "mazo de nervio" a menudo lo llamaba para decirle datos sobre este tema.[38]

Aseguró nunca haber sido objeto de una investigación, ni tan siquiera por un accidente de tránsito, ni por el Departamento de Hacienda.[39] Relató que, toda su vida ha luchado por preservar su nombre y evitar que se le vincule con actividades al margen de la ley.[40] Particularmente declaró "si hay algo que yo valoro en mi vida lo valoro con la profundidad de [sic] mundo es mi nombre." [41]

Sobre la foto suya que publicó Delgado Torres junto con la información falsa aseguró no haber prestado su consentimiento para su publicación.[42] Además, negó lo expresado por Delgado Torres sobre un presunto "plan maquiavélico" de usurparle el puesto a la entonces alcaldesa de Ponce, María (Mayita) Meléndez y comentó a esos efectos "[l]o terrible detrás de todo esto es que la gente se lo cree."[43]

Surge de la prueba antes reseñada que, el apelado demostró haber sufrido angustias mentales derivadas de las publicaciones falsas de Delgado Torres insinuando, entre otros, que Colón

---

[34] TPO, Apéndice, pág. 509.
[35] TPO, Apéndice, pág. 528.
[36] TPO, Apéndice, pág. 529.
[37] TPO, Apéndice, pág. 633.
[38] TPO, Apéndice, pág. 529.
[39] TPO, Apéndice, págs. 532-533.
[40] TPO, Apéndice, pág. 575.
[41] TPO, Apéndice, págs. 599-600.
[42] TPO, Apéndice, pág. 602.
[43] TPO, Apéndice, pág. 632.

Santiago en un futuro sería investigado y arrestado por el Departamento de Justicia Federal por delitos de corrupción. Cabe puntualizar que, la página cibernética del apelante tiene acceso a aproximadamente 412,000 seguidores.[44]

En particular, Colón Santiago demostró su sufrimiento y su frustración ante la posibilidad de que dicha información falsa afectara su credibilidad y su integridad. Detalló a lo largo de su testimonio sus esfuerzos de superación, su convicción de mantener su buen nombre y su deseo de pasarlo en herencia a sus hijas. Atestó su sentir al saber que sus seres queridos tenían acceso a tal información falsa y su posible efecto en ellos.

Es de notar que Colón Santiago no presentó prueba pericial sobre las angustias mentales sufridas. Sin embargo, en *Meléndez Vega v. El Vocero de P.R.,* supra, el Tribunal Supremo aclaró que la prueba pericial no es un requisito para establecer los daños por concepto de angustias mentales. Su ausencia, más bien, dificulta la labor de cuantificar la magnitud del impacto emocional en la parte demandante. A lo anterior se añade que, el apelante no impugnó el testimonio que vertió el apelado. Por tanto, las determinaciones de hechos del foro primario -basadas en las alegaciones que se dieron por admitidas- quedaron sustentadas con la prueba oral no controvertida, por lo cual, merecen nuestra deferencia. *Pueblo v. Hernández Doble,* 210 DPR 850, 864-865 (2022).

En virtud de lo anterior, no identificamos que el foro primario haya errado en su análisis de la prueba al determinar que Delgado Torres publicó negligentemente información difamatoria sobre Colón Santiago y con ello le provocó angustias mentales. El apelante no demostró que la valoración de las angustias mentales que realizó el TPI fuera apasionada, prejuiciada, parcializada o manifiestamente

---

[44] TPO, Apéndice, pág. 530.

errónea, por lo cual, nos abstendremos de intervenir con la apreciación de la prueba y la credibilidad que el juzgador de los hechos le adjudicó en este caso. *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 203 (2013). Los errores cuarto, quinto y séptimo no se cometieron.

Por último, surge del sexto señalamiento de error que el apelante cuestiona la concesión de daños a la reputación a favor de Colón Santiago. En su recurso el apelante destaca que, Colón Santiago no demostró haber sufrido un daño reputacional compensable debido a que, según surge de su testimonio, su reputación no se vio afectada entre sus conocidos ya que estos no creyeron la información publicada. Con respecto a su reputación ante las personas no conocidas, el apelante expone que el apelado no presentó prueba alguna.

Puntualizamos que, el TPI dio por admitidas las alegaciones de la demanda y las materias objeto del requerimiento de admisiones, y con ello, quedó establecido que las manifestaciones difamatorias de Delgado Torres ocasionaron daños a la reputación de Colón Santiago. En cuanto a su valoración, el foro primario cuantificó los daños a la reputación en $50,000.00, basado en el testimonio del apelado.

Como se sabe, nuestro ordenamiento jurídico nos obliga a conceder gran deferencia a la credibilidad que el TPI confiere a los testigos que declaran ante sí, salvo que el apelante demuestre que medió pasión, prejuicio, parcialidad o error manifiesto. Lo antes, debido a que es el juzgador de los hechos quien observa y escucha a los testigos declarar. A lo anterior se añade que, nos resulta persuasiva la *Sentencia* que emitió el Tribunal Supremo (CC-2019-0318) sobre una causa de acción difamatoria mediante la cual concluyó que el testimonio de la persona difamada es suficiente para establecer daños a la reputación, sin que sea necesario demostrar

una "pérdida externa objetiva" o "la merma de estima de alguien en su círculo íntimo" mediante prueba directa o detalles específicos. Sobre tales bases, resolvemos que el foro primario no cometió el sexto error que se le imputa.

**IV.**

Por los fundamentos discutidos, confirmamos el dictamen apelado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones